We're going to begin with oral argument from the appellant, Mr. Leaf. Mr. Leaf is appearing remotely. Mr. Leaf, I understand you have reserved five minutes for rebuttal? That's correct, Your Honor. Thank you. We can hear you, and opposing counsel can as well. Mr. Leaf, I'll recognize you. Thank you. May it please the court, counsel, my name is Roy Leaf. I'm an attorney. I'm here on behalf of Mr. Gills v. Robert Hamilton. I'm an attorney at the Nymaster Good Law Firm in Iowa. I represent Jaryan Gills as his pro bono counsel. He is the appellant in this case. First, I want to thank the court for allowing me to appear via Zoom. My wife works in the medical profession and works odd hours, making child care difficult at times. I plan to address three issues today. First, I will explain why the district court erred in denying Mr. Gills' partial motion for summary judgment against the IDOC defendants, because the conditions in the medical segregation cell in which Mr. Gills was kept at East Moline Correctional Center for 31 days were unsanitary, below the basic human standards of living, and violated the Eighth Amendment as a matter of law. Second, I will explain the numerous genuine issues and material fact that exist with regards to Mr. Gills' claims against Dr. Rankin and the IDOC defendants. The district court committed clear reversible error by granting summary judgment to the IDOC defendants and Dr. Rankin, and its decision amounted to impermissible credibility determinations at summary judgment. Finally, I will address why genuine issues and material fact exist with regards to Mr. Gills' civil conspiracy claims against Dr. Rankin and the IDOC defendants. First, the decision on whether to reverse the district court's grant of summary judgment to the IDOC defendants and Dr. Rankin is, frankly, an easy one for this court. Even putting aside the fact that the district court completely ignored Mr. Gills' testimony, which I will address later. Is that the deliberate indifference claim, Mr. Leaf? Are you telling me now about the deliberate indifference claim? Yes, thank you, Judge. The deliberate indifference claim. Okay. What is the specific medical condition to which the IDOC defendants were deliberately indifferent? The medical condition they were deliberate to, indifferent to, was his broken arm, which had a femur fracture. He had two orthopedic surgeries to repair it, and he was recovering from that. He also had some wounds from an assault. And there was also denial of certain medications by one of the IDOC defendants, Dunn, who did not bring him pain medication for those injuries or Pepsid, which he was prescribed. So the decision to reverse, I hear, I believe is easy, even putting aside the fact the district court disregarded Mr. Gills' testimony almost completely. The district court failed to consider, among other things, the declaration of Leroy Smyth. Mr. Smyth was a medical court at East Moline Correctional Center, who was assigned to clean and do basic functions for the cell that Mr. Gills was confined in for 31 days. Mr. Smyth testified via declaration that he saw guards refuse multiple times to take Mr. Gills to the bathroom, that he cleaned feces and urine out of one of his pockets. What does that have to do with the broken arm, the assault wounds, or the pain medication? Your Honor, that has to do with the conditions of confinement claim, the 1983 conditions of confinement claim. So Mr. Gills brings two varieties of the 1983 claims. There's both the conditions of confinement claim and a medical indifference claim. Okay, on the conditions of confinement claim, I'm confused a little bit on what is exactly the plaintiff's Eighth Amendment right or claim that he's alleging? Because I read from your brief that his Eighth Amendment right to be right from the free of the risk of infection. Is that correct? That's correct, Your Honor, right to be free from risk of infection, also right to have a basic sanitary environment to be housed in. Are there any cases anywhere that you can cite to that say that a defendant has an Eighth Amendment right to be free from the risk of infection? Yes, Your Honor, I believe that in my brief I've cited the cases that say that there is a right to be free from the unnecessary risk of infection, that that goes beyond the punitive nature of punishment and that crosses into cruel and unusual punishment. Is this rule that you're promulgating effectively a per se rule? No, Your Honor, I believe it's a facts and circumstances test. I believe here it's important that Mr. Gills was in a compromised medical condition. So his height of infection was or his risk of infection was materially heightened by the fact he just undergone two orthopedic surgeries and had open wounds on his arm on his face that are documented. Is this specific to him and his circumstances being injured in a med-seg unit with the allegations with regard to the ability to have a toilet? That's correct, in a sink or some way to sanitize his hands. He had no way, you know, there was a plastic urinal provided to him, which I believe is a recognition that he may need to use it from time to time, which he did, and that there was no way to sanitize his hands even after he, you know, used the facility he urinated. That creates a risk of infection. I think that that's both medically and just common, you know, human sense applicable. I just, I wonder, do you think this right existed 150 years ago, the right to have a toilet in your cell? Or is this an evolving right? Or how do we, how do we, how do we figure this out? I mean, I get the unsanitary conditions, but the unsanitary conditions here are not that he wasn't able to use the toilet. It was that, at least the way I understand it, was that he didn't have a toilet in his cell. Really, that he didn't have running water in his cell. So after he used the portable urinal, he was not able to wash his hands, which increased the risk that he might be infected. Even though he was never infected, and therefore there's a constitutional violation, and he has a claim on the Eighth Amendment. I'm having trouble, I'm having trouble putting all those things together and then thinking, boy, has that been the law for 150 years? Or is that new? You know, where does all that come from? Yeah, Your Honor, it's a good question. I think there's two ways to approach it. I think if you want to approach it from the standards of evolving decency, I think in 2025, it's a basic human right to have working plumbing in the sink. Approaching it, though, from looking 150 years ago or 200 years ago, was that there? No, there was no plumbing. But I believe the Eighth Amendment did protect individuals from being free from unnecessary risks that go beyond and having clean cells. I'm not talking about plumbing, per se. I'm talking about a toilet in your cell. Clearly, if a prisoner had no access to a toilet or no access to running water, that probably would have been a problem 150 years ago. But I'm not sure that prisons were constructed with toilets and sinks in individual cells. That's all. Yeah, Your Honor, and just to make a distinction that I think is important. For purposes of Mr. Gill's motion for summary judgment, obviously, all facts have to be assumed in favor of the IBOC and defendants and Dr. Rankin. They'd allege that he was offered the ability to use the bathroom every 30 minutes, that there were no issues. Nobody was aware of the fact that he ever defecated, urinated, vomited in his cell. Now, going to the defendants. Can I ask you a question about that? In your brief, do you argue that the officers were aware that Mr. Gill's was not being taken out regularly for bathroom breaks or that they failed to provide reasonable measures to clean up? In other words, the defendants that you sued in your blue brief, I had a hard time finding where you argued that they were aware of any potential constitutional deprivation. Judge, we actually argue they intentionally refused to take him to the bathroom. There's evidence that multiple defendants, multiple times for entire eight-hour shifts, would refuse to take him to the bathroom when he asked so that they would be aware that he would have to do his duty in the cell otherwise. And the record shows that in that 30 days that he was in the segregation unit, there was one grievance from him. Is that correct? I believe that's what the record reflects. Yes, there was one grievance from him. Let me ask you about where you're locating your Dr. Rankin arguments. Because in your brief, you don't list him in the section that's about conditions for confinement. Are you asserting that conditions of confinement claim against him, or is it just deliberate indifference for him? And then you're arguing that he was deliberately indifferent to the effects of the conditions on Mr. Gill's medical state. Judge, it's a two-part argument. So the first part would be, yes, deliberate indifference to the various medical conditions that are cited in the brief, and I'm happy to expand on those further. There's also, I believe, deliberate indifference to those conditions. But as an alternative, there is also a conditions of confinement claim that being a medical professional, Mr. Gill's, again, viewing evidence in the light most favorable to Mr. Gill's. Mr. Gill's testified and put in his declarations that he multiple times told Dr. Rankin about the conditions of the cell, the fact that he was urinating, defecating, and that Dr. Rankin did nothing about that. Even though he had the ability, as the warden testified, to bring a portable toilet in to that cell, he didn't do that. And so as a medical professional, even I believe basic common sense, but as a medical professional in particular, he should have been aware that the conditions of those cells created a heightened risk of disease were not proper for somebody in Mr. Gill's medical condition. And so, therefore, there's an Eighth Amendment violation also for conditions of confinement with respect to Dr. Rankin. I see that at my time, my 10 minutes is approximately up. I will reserve the remaining five minutes and I can address Mr. Gill's civil conspiracy claim during that time. Very good, Mr. Lee. Thank you. We're now going to move to the argument from the appellee. We'll begin with Mr. Freelich. Good morning, Your Honors. Matt Freilich for the State Defendants. The court should affirm the District Court's judgment. The District Court correctly granted the State Defendants' motion for summary judgment on each of Gill's claims against them, and also correctly denied Gill's affirmative motion for partial summary judgment on his conditions of confinement claim. And I wanted to focus this morning on the substantive conditions claim. Before we get there, let's talk a little bit about the summary judgment record. Much discussion of James v. Hale. Is it your position that James v. Hale creates a new rule different from the sham affidavit rule? Is it an extension of the sham affidavit rule? I'm trying to get a feel for what your position is on the reach-back complaint verification question. Is that dicta holding? What is it? So I think in one sense it is dicta, Your Honor, and it's something separate from the sham affidavit rule. There's a well-established body of precedent that governs when that rule applies, and it focuses on contradictions generally between the plaintiff's summary judgment affidavit and their deposition testimony, in some cases other parts of the record. That is not the doctrine that the District Court relied on to disregard Gill's supplemental declaration in this case. She was relying on a separate part of the opinion in James, and James ultimately upheld the disregarding of a declaration based on the sham affidavit rule. But there was an entire separate section of the opinion, and I'm referring to Part 2A of the opinion, where it discussed this, what it termed a reach-back complaint verification procedure. So I think a reasonable district judge working with that part of the opinion in James v. Hale could have reached the same result that the district judge reached in this case. I certainly acknowledge that there's a distinction between what happened in James and what happened here. In James, the affidavit literally swore that the allegations in a pleading were true. In this case, the plaintiff copied almost verbatim the content of the operative complaint into a summary judgment declaration. I think a reasonable judge under those circumstances could read James v. Hale to allow her to make that ruling. But I do think that regardless of whether the supplemental declaration should have been part of the record, I don't think it's outcome determinative. Even if the court were to disagree on that threshold ruling or if the court were to decide to pass on that question entirely and just assume the expanded version of the record for addressing the merits, I think that the outcome would be the same and the judgment should be affirmed either way. So on the merits, again, regardless of the state of the record, the district judge's rulings on the summary judgment motions was correct because the evidence that Gills presented did not establish a genuine issue of material fact that any of the state defendants had subjective knowledge and was deliberately indifferent to an objectively inhumane condition that Gills experienced when he was in medical segregation. I want to begin on the merits by addressing the objective prong of the analysis and specifically to pin down exactly what Gills' theory of liability is on the Eighth Amendment. I think that's going to be very important when it comes to the subjective component and ascertaining what exactly Gills' summary judgment burden was when it came to evidence of the Eighth Amendment violation. Gills' theory in the district court and the theory he is continuing to press on appeal, at least in his opening brief, was that his Eighth Amendment rights were violated because he was incarcerated in a cell that did not have a sink or a toilet inside of it, which he says violated the Illinois Administrative Code. And I'll assume the code violation for the sake of argument, but even making that assumption, that theory of liability is still wrong on several grounds. The first being that Eighth Amendment violations are not determined by reference to state administrative requirements. I know Gills cited a case from the District of Massachusetts to argue otherwise. Whatever the state of the law in the First Circuit, the law in this circuit is clear that these two things exist in separate spheres. And second, even putting the Administrative Code aside and just focusing on this court's relevant precedents, it doesn't follow from those precedents that an inmate has the specific right to have a toilet and sink inside his cell. I think the closest cases on point on that issue are Jackson v. Duckworth and Vinningell v. Long. Both of those cases fit into a broader line of authority, recognizing an Eighth Amendment right to minimally sanitary conditions. They fall well short of establishing that an inmate has the more specific right to have restroom facilities located inside his cell, and that that right is violated if he has to use the facilities elsewhere inside the prison. And then finally, Your Honors, even if the court were to hold that an inmate does have that more specific Eighth Amendment right, that wouldn't support liability against the defendants in this case, because if that were the claim, at that point, qualified immunity would come into play. We did raise qualified immunity in the district court. We raised it again in our brief in this court. And regardless of whether Jackson and Vinningell could be extended to create that more specific Eighth Amendment right, that right absolutely was not clearly established in February or March of 2020 when the alleged constitutional deprivations occurred. I want to move on to the subjective component of the analysis next, and Gil's arguments on this component of the test fail for a similar reason, that his arguments were deficient when it comes to the objective wrong. Gil's argued in his brief that the defendants were liable because they had subjective knowledge that his cell did not have a sink or a toilet inside of it, and he sought to hold them liable on that basis. That was his argument in the district court. That's his argument in this appeal. But as I just explained, that circumstance itself is not an Eighth Amendment violation. So the defendant's subjective knowledge of that circumstance would not have put them on notice of a constitutional deprivation in a way that would subject them to 1983 liability. I do want to draw a distinction between, on one hand, just all of the facts that Gil's discussed in his brief, and, on the other hand, what his actual theory of liability is. Because Gil does mention that he relieved himself in his cell on occasion, and that certainly the defendants denied his requests to use the restroom on occasion. However, when it comes to the theory on which he's seeking to hold the state defendants liable, that theory is that they were subjectively aware that there was an administrative code violation and that he was housed in a cell that didn't have a sink or a toilet inside of it. And finally, Your Honors, I know our brief discussed what would have happened if Gil's had advanced this alternative theory of liability, where the Eighth Amendment harm is actual unsanitary conditions inside the cell, and not just the mere lack of a sink or a toilet, essentially an administrative regulatory violation. Even if that had been the theory that Gil's was advancing, and I want to be very clear that it's not, that still wouldn't have supported liability because the facts wouldn't have supported a reasonable inference that the defendants were aware of that much more specific fact. At that point, Gil's evidentiary burden, when it came to the subject upon analysis, would have been considerably higher, and he would have had to address liability defendant by defendant, because the defendants absolutely were not similarly situated when it came to their knowledge of what was actually going on inside Gil's cell. They each interacted with him in different ways, and many of them were not even assigned to duty in the health care unit. What you're referring to is pages 29 and 30 of the blue brief. I am. So I think in terms of if the court is trying to ascertain what exactly his theory is, and to be specific, what is the factual link between what he's saying the Eighth Amendment violation was and what the defendants were aware of in a way that would make them liable, it's the knowledge of the administrative violation. And for the reasons I discussed earlier, that on the objective prong of the analysis is wrong. Gil's is not arguing that the defendants had subjective knowledge of a further circumstance. And I don't think the court is under any obligation to consider that theory. I know we discussed it in our brief, but Gil's did not discuss that in his. And even when we raised that point in his reply brief, I think he makes this clear on pages three, three to four of the reply. He's doubling down on his theory that the Eighth Amendment violation is basically tantamount to the administrative code violation. In other words, I'm just curious. It's summary judgment in discovery in this case. Was it litigated differently? Was it litigated as if individual defendants denied Mr. Gil's the opportunity to go to the bathroom repeatedly over long periods of time and were aware that he was not being taken out of the cell to use the toilet or to use the sink? I think the theory is essentially the same. So I think both in the district court briefing and here, he does state as a matter of fact that some of the defendants refused his requests to use the restroom. Yeah, but that doesn't necessarily lead to an Eighth Amendment violation without significantly more. And was the significantly more litigated in discovery in the district court or was it not? So I want to separate the litigation and the summary judgment briefing from the discovery. I think there were facts that were reduced in discovery that had Gil's made other strategic choices. He might have tried to advance that theory. For the reasons I discussed, I don't think that would have been successful in terms of what he actually argued to the district judge. That is not what he argued. He didn't go defendant by defendant. He said that they were each aware of the administrative code violation. And for those reasons, I think the district judge's rulings were correct on the summary judgment motions and the judgment should be affirmed in its entirety. I want to be mindful of my colleagues time. If the court has any further questions, I'm happy to address them. If not, I'll see what I need for my time. Thank you. Thank you, Mr. Freilich. We'll now move to his Mr. Kriak. Great. Great. Please, the court Patrick Craig, on behalf of Dr. Rankin, the district court's order granting Dr. Rankin summary judgment should be affirmed to answer your question about James versus Hale and reach back and point verification to add additional color there. I think there's two bases in James versus Hale as to why that affidavit was stricken. One, because it contradicted prior testimony. And two, because of the supplemental declaration constituted inappropriate reach back complaint verification. So in terms of James versus Hale's impact, I think it's a reinforcement of the sham affidavit rule and striking contradictions with prior testimony. I think its impact is more more recognized for the reach back complaint verification aspect because it commented on the case of Ford versus Wilson, where the inmate in that case did not have counsel. And because he swore to the allegation, the complaint as true, the court accepted that affidavit in that case, despite of constituting quote unquote reach back complaint verification. But what James versus Hale decided was in cases where the plaintiff is represented by counsel and there's a long history of discovery in the case, it's going to not be as accepting as representative counsel doing what happened here, which is looking back to the complaint and adopting those allegations as facts appropriate for summary judgment. Do you agree with Mr. Farlock that it's dicta? But it's because obviously there's treatment of that earlier case at the beginning of James versus Hale. And the work was done by Judge Sykes to point out that those were counsel versus non-counsel cases or non-counsel versus counsel cases. Do you agree though that extension is dicta or do you think it's holding? I think it reads more like dicta when you read the opinion, but I do think that there's multiple bases from James that were applied by the district court here as to why the affidavit was driven, both because there was contradictions between the testimony and supplemental declaration. And the declaration amounted to adopting the allegations in the complaint wholesale as facts appropriate for summary judgment, even though they contradicted the facts that were induced throughout the process of discovery. I'm happy to address the claims against Dr. Rankin of conditions of confinement and civil conspiracy as that is what counsel brought up here today. I'm also happy to stand on my brief with respect to those claims. I think the deliberate indifference to serious medical claims, what's more discussed in the briefs and on those points with Dr. Rankin and what counsel argued in his reply brief. His first contention is with respect to just because there was a lot of appointments with Dr. Rankin and other treaters at EMCC, Gills argues that perfunctory appointments don't necessarily constitute meaningful medical care and he cites in support of this court's decision in Perez. A few problems with that. Perez was an appeal of a merit screening review order at the outset of the case and didn't have any, there was no discovery of the case and the defendants hadn't even served in that case. And this court determined that a screening review, just because there are a lot of appointments doesn't necessarily mean that the claim should be, there's a failure to state a claim because the care might not have been meaningful even though it happened a lot. But in this case, there was a discovery and it revealed that the care that Dr. Rankin and other treaters provided at EMCC was far from perfunctory. So the comprehensive course of care he received from the date of his injury for over five months in the infirmary and then follow care thereafter did not constitute negligence, let alone deliberate indifference. We cited in our brief as a point of comparison in the case of Kaschner versus Whitehop, this court's decision in 2017. And in that case, over a span of six months, there were 17 telephone orders and six in-person appointments. Here we have in a more brief period of time, much more appointments, much more orders. And Gills noted in the medical records as stating that the treatment helped him throughout the course of care and his fracture ended up healing. And the record here shows that this was not even negligence, let alone deliberate indifference. And then in Gills' reply, he also asserts that the November 21st, 2020 note, the first time that Mr. Gills complains of any pain following his discharge from the infirmary, states that that provided subjective knowledge, Dr. Rankin, of the joint stabilization hardware somehow causing pain. And I think that this court can dismiss that argument for three separate reasons. One, because that note doesn't provide any subjective knowledge or evidence of subjective knowledge that the hardware specifically was causing the pain. Secondly, his response was reasonable. He referred him for physical therapy, which he had still not yet received because of the COVID pandemic, and that PT led to him actually getting the hardware removed. And third, because that is a claim for delayed rather than denied medical care, he needs to introduce verifying medical evidence to allow a jury to determine that the delay specifically caused the pain and not the underlying arm fracture that the orthopedic treatment said throughout the course of care, there was no guarantee that the arm will return to full function and be without pain. So if there are no other questions, we ask that the court affirm summary judgment in favor of Dr. Rankin. Thank you, Mr. Craven. Mr. Leaf, we're going to move back to you now for rebuttal argument. Thank you, Judge. A couple points I'd like to make, and I'll start backwards with counsel's argument regarding Dr. Rankin. I do want to note it was more than just a medical note on November 21st, which is to be clear, approximately five months after Mr. Gills had the hardware inserted into his arm, which is also well outside of the eight to 12 weeks that the orthopedic surgeon said the device needed to be removed within. During that meeting, it was noted that there was arm discomfort by Mr. Gills and not only was there a note, but Dr. Rankin testified to it in his deposition. I believe that is cited in my briefing. With regard to the multiple follow up appointments that Dr. Rankin's counsel noted, I believe the Perez case is obviously on a different factual proceeding. But that court makes clear that if a medical professional could just simply schedule appointments and do nothing during those appointments, it could discharge its Eighth Amendment obligations without actually rendering medical care, which would be an end around of the Eighth Amendment. So I do believe Perez is still good. I also want to note with respect to the sham affidavit rule in the application of Hale, the illogical conclusion that would be reached here. After I was appointed, I did an investigation with my client, reviewed the record and put together a 43 page amended complaint that had 11 exhibits to it to both put the defendants in the court on notice of what I saw were significant issues here. The conclusion of applying the district court's ruling here is if instead I would have done a very simple amended complaint that would have barely satisfied the requirements of Rule 8 and then put together declarations in substantially the same form as they were submitted here, that that would have been acceptable. But because I filed a fulsome amended complaint and then use those same allegations when they were verified during the course of the case or not contradicted, that that created a problem. I don't believe that that is an appropriate rule to make here. I believe that's perverse to the reasons that we're here, which is to search for truth and justice and that counsel should be encouraged in an early stage of the case to put forward facts that come to light both during discovery. Mr. Leaf, permit me, am I missing something? Is there a reason those statements that you added to the declaration and you say they were part of this amended complaint, is there a reason they could not have been addressed during discovery, for example, during Mr. Gills' deposition? Yes, Your Honor, the defendants could have asked Mr. Gills during his deposition. They could have gone through the amended complaint and asked him line by line. Do you recall this? You remember this? What do you remember about this? And tested his recollection. They didn't do that. He wasn't presented with many documents at all. And 1 of the things that he says, and 1 of the 2 contradictions that are noted, he says he doesn't recall without documents what date something happened. So there weren't any blatant contradictions that could have been asked to the extent that I would have needed to essentially depose my client to get that information out on the record rather than putting in via declaration. I don't think that's necessary or appropriate or what's a typical practice on a case like this. I also want to address the issue of subjective knowledge that was raised by the IDOC defendants. There are 2 prongs. Yes, counsel is correct that 1 of the reasons I believe that there are subjective knowledge here is each of the IDOC defendants, other than Dunn, had specific training on the Illinois administrative code, were aware of the requirements in segregation cells that they needed to have a sink and a toilet. But Mr. Lee, that's your argument. That was the question that I asked earlier on pages 29 and 30 of your brief. You don't argue anywhere the question that I asked, which is where is the argument that specific defendants were aware that your client was not being able to use the toilet for extended periods of time, was not being able to wash his hands. They don't appear in your blue brief. You simply argued that they were aware that he didn't have a toilet and sink in his cell, and that's enough to establish a constitutional violation. Your honor, you're correct that they were not specifically addressed in my brief. They were, I believe, raised at the district court level where I did walk through each defendant and their subjective knowledge. For example, the warden defendant Hamilton received the grievance from Mr. Gills. He was made aware that he didn't have a sink or toilet. The assistant warden was making rounds on the medical floor. There's evidence that Mr. Gills went to the assistant warden and said, I don't have a sink or toilet here. I'm not being asked to use the bathroom. There's also, as I indicated in my opening arguments, the evidence regarding specific defendants intentionally refusing to take him to the bathroom. So you are correct. It's not addressed in my opening argument. It was presented and litigated at the lower court level. Finally, with regards to my civil conspiracy claim, I see I'm running out of time here, but I would like to just quickly note that obviously conspiracy is proven by circumstantial evidence. There's a number of circumstantial pieces of evidence here that are directed to in my brief that I think are clearly sufficient from a summary judgment perspective. And with that, I'm out of time. I'm happy to answer any questions, and I appreciate the court's attention to this matter. Thank you, Mr. Leaf. The great thanks of the court for accepting this case for your fine representation as well as for the fine representation of the state and the case will be taken under advisement.